# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No.: 5:12-cr-00810-JMC |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Gerald Decosta Whaley, | ) | |
| Defendant. | ) | |

This matter is before the court on *pro se* Defendant Gerald Decosta Whaley's ("Defendant") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 252.) The United States of America ("Government") filed a response in opposition to Defendant's Motion, and contemporaneously moved for summary judgment. (ECF Nos. 267, 268.) Pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. Defendant has filed his response, and the matter is now ripe for resolution.

A prisoner in federal custody under sentence of a federal court may petition the court that imposed the sentence to vacate, set aside, or correct the sentence. *See* 28 U.S.C. § 2255. The prisoner may be entitled to relief upon a showing: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. *Id.* A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004) (citing *Miller v. United States*, 261 F.2d 546 (4th Cir. 1958)). In ruling on a § 2255

motion, the court may dismiss the motion without a hearing where "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings, that the moving party is not entitled to relief." 28 U.S.C. § 2255(b) (noting that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief).

The Government has also sought summary judgment on Defendant's claims in this case. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

After reviewing the parties' respective memoranda and the record of the underlying proceedings, the court determines that an evidentiary hearing is unnecessary. For the reasons set forth herein, the court **DENIES** Defendant's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (ECF No. 252), and **GRANTS** the Government's Motion for Summary Judgment (ECF No. 268).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Beginning as early as 2006, and continuing up to the date of his arrest on February 12, 2013, Defendant and his brother, Troy Kentrell Whaley, conspired with each other and others, to knowingly possess with intent to distribute cocaine, marijuana, and various pills sold as ecstasy. (ECF No. 1.) Beginning at least as early as 2006, the Drug Enforcement Administration ("DEA") began receiving information from confidential informants and cooperating defendants that the Whaley brothers were involved in the armed trafficking of large quantities of marijuana, cocaine, and pills sold as ecstasy. (ECF No. 267 at 2.)

On August 25, 2012, Sgt. Arney L. Lucas with the Orangeburg Department of Public Safety encountered Defendant at a convenient store. (*Id.*) Sgt. Lucas smelled a strong odor of marijuana inside the convenient store near the cash register where Defendant was standing in line to pay. (*Id.* at 3.) When Defendant approached the counter, Sgt. Lucas could smell the strong odor of marijuana coming from his person. (*Id.*) After Defendant paid the cashier, he turned and walked out of the store and Sgt. Lucas noticed that the smell of marijuana left with him. (*Id.*) At that point, Sgt. Lucas followed Defendant out of the store and attempted to speak to him. (*Id.*) After Sgt. Lucas told Defendant that he was law enforcement and he needed to speak with him, he refused to stop and continued walking away. (*Id.*) Sgt. Lucas asked Defendant to stop and at that point Defendant advised that he just wanted to put his water in his car. (*Id.*) Defendant attempted to walk past Sgt. Lucas to a car, at which point Sgt. Lucas told him not to go to the car. (*Id.*) When Defendant tried to push past Sgt. Lucas, Sgt. Lucas pulled his Taser and told him to stop where he was. (*Id.*) Defendant then ran across the street in an attempt to get away from Sgt. Lucas. (*Id.*)

After a brief foot chase, Defendant stopped running and Sgt. Lucas ordered him to the ground. (*Id.*) Defendant would not comply with the commands to get on the ground and began to reach into his front right pants pocket, at which time Sgt. Lucas discharged his Taser striking Defendant in the chest. (*Id.*) Defendant went to the ground and was then handcuffed by Corporal Brightwell, who showed up to back up Sgt. Lucas. (*Id.*) Defendant was searched and officers found approximately 4.9 grams of marijuana in his right front pants pocket, two small baggies containing approximately 1.4 grams and .9 grams of marijuana in his right watch pocket, the keys to the vehicle he was attempting to enter in his left front pants pocket, and $480.00 in his left rear pants pocket. (*Id.*)

The officers searched the car Defendant was attempting to enter and located a large clear plastic bag with approximately 40 grams of marijuana inside of the bag. (*Id*.) Officers also found two handguns in the vehicle, a Ruger .380 caliber pistol loaded with 7 rounds of ammunition, and a Glock, model 21 .45 caliber handgun loaded with 25 rounds of ammunition. (*Id*. at 4.) Officers also located an extended magazine for the Ruger pistol that contained 14 rounds of ammunition. (*Id*.) Based on this incident, Defendant was charged with resisting arrest, possession of marijuana with intent to distribute, and unlawful carrying of a pistol in violation of South Carolina state law. (*Id*.) On January 17, 2013, and in connection with the above referenced arrest on August 25, 2012, Defendant pled guilty to the charges in Orangeburg County General Sessions Court. (*Id*.)

After the original indictment against Defendant and Troy Whaley was returned in October of 2012, DEA agents applied for and received authorization from United States Magistrate Judge Paige Jones Gossett to search the homes of both Whaley brothers. (*Id*.) Magistrate Judge Gossett signed the warrants authorizing the search of the Whaley brothers' homes on February 8, 2013, and the agents executed the search warrants on February 12, 2013. (ECF Nos. 48, 49.)

When agents conducted the search of Defendant and Kenyetta Guinyard's (who lived with Defendant) home, they found more evidence of Defendant's armed drug trafficking. (ECF No. 267 at 4.) In addition to locating over 8 pounds of marijuana, various pills, a kilogram wrapper that lab tested positive for cocaine, drug paraphernalia, and over $100,000.00 cash, agents located multiple firearms, including a High Standard Double Nine .22 caliber revolver, a Marlin model 60 .22 caliber rifle, a Winchester model #94 .30 30 caliber rifle, a Masterpiece Arms ACP .45 caliber pistol, an Omega model #100 .22 caliber revolver, a Taurus model PT25 .25 auto (caliber) semi-automatic pistol, a Browning Mark 5, 12 gauge shotgun, and a Savage Stevens model 940E, 16 gauge shotgun. (*Id*.) During Kenyetta Guinyard's debriefings, she provided information that the

money, drugs, and firearms found at her residence all belonged to Defendant, and that she witnessed numerous individuals, many of whom she did not know, meet with Defendant at her house for short periods of time. (*Id*. at 5.)

On January 14, 2014, after extensive plea negotiations, Defendant pled guilty to Count Six of the Superseding Indictment pursuant to a written plea agreement. (ECF No. 256.) Under the agreement, Defendant was not contractually obligated to cooperate like his co-defendants and the Government agreed to dismiss the remaining counts of the Superseding Indictment in exchange for his plea to Count Six. (ECF Nos. 209, 256 at 22-26.) During the plea colloquy, the Government specifically noted that paragraph 7 of Defendant's plea agreement contained a waiver of his rights to both direct appeal and to appeal pursuant to § 2255. (ECF No. 256 at 17-25.) The court specifically questioned Defendant to ensure he understood the agreement. (*Id*. at 26.)

Also during the plea colloquy, Defendant specifically stated that he understood that the Government considered him a career offender and that he would not be facing the statutory mandatory minimum sentence of 5 years, but rather he would face enhanced penalties as a result of his prior record. (*Id*. at 15-16.) Defendant acknowledged that his counsel had advised him of the fact that the Government considered him a career offender and he agreed to plead guilty knowing that fact. (*Id*. at 16.)

During his plea colloquy, Defendant admitted that on February 12, 2013, he possessed numerous firearms in connection with a drug trafficking offense, that offense being conspiracy to distribute cocaine and marijuana. (ECF No. 256 at 16.) As noted in the Presentence Investigation Report ("PSR"), on February 12, 2013 agents located eight firearms, various rounds of ammunition, approximately 5 pounds of marijuana, and over $100,000.00 in United States currency from the residence that Defendant shared with Kenyetta Guinyard. (*Id*. at 26-30.)

Defendant was sentenced on April 29, 2014, after the United States Probation Office prepared the PSR. (ECF No. 257.) The Government filed a sentencing memorandum and argued that Defendant should receive a 300 month sentence. (ECF No. 240.) Prior to hearing arguments from counsel, Defendant affirmed that he had no objections to the PSR and he wished to abide by the terms and conditions of his plea agreement. (ECF No. 257 at 3.) Defendant acknowledged that his counsel had discussed the fact that he was facing 262-327 months by virtue of the fact that he was a career offender.[1] (*Id*. at 4.)

After hearing arguments from the Government and Defendant's counsel, the court sentenced Defendant to 262 months of incarceration, followed by 5 years of supervised release. (*Id*. at 32.) The court reminded Defendant that pursuant to his plea agreement, he had waived the right to either contest the conviction or the sentence in any direct appeal or post-conviction action, including proceedings under § 2255. (*Id*. at 33.) Pursuant to the plea agreement, the Government moved to dismiss the remaining counts of any indictments against Defendant and the court granted that motion. (*Id*.)

On April 13, 2015, Defendant filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, asserting (1) Defendant's counsel was ineffective for failing to file a direct appeal after Defendant advised him that he wished to file an appeal; (2) Defendant's counsel was ineffective for failing to file a motion to suppress evidence obtained in violation of Defendant's Fourth Amendment right against illegal search and seizure; and (3) Defendant's counsel was ineffective at sentencing in that he failed to challenge and be objective to Defendant's

---

[1] Defendant's priors were a 2007 possession with intent to distribute marijuana and a 2013 possession with intent to distribute marijuana. (ECF No. 267 at 7 n.1.) Defendant received 4 years suspended on 2 years probation on the 2007 offense, and 8 years suspended on 90 days and 5 years probation on the 2013 offense. (*Id*.) These offenses qualify as predicates for career offender pursuant to U.S.S.G. § 4B1.1.

prior convictions at a critical stage of the proceeding. (ECF No. 252-1.) On November 25, 2015, the Government filed a response in opposition to Defendant's Motion, and contemporaneously moved for summary judgment, asserting that all of Defendant's arguments were conclusory, and there were no facts to support his claims that his counsel was ineffective. (ECF Nos. 267, 268.) On January 13, 2016, Defendant filed a response in opposition to the Government's Motion for Summary Judgment, essentially rearguing his § 2255 Motion. (ECF No. 271.)

## II. ANALYSIS

In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. United States*, 466 U.S. 668 (1984). The defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." *Id*. at 689. As the *Strickland* Court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . [E]very effort [must] be made to eliminate the distorting effects of hindsight…

*Id*. at 689.

A defendant who alleged ineffective assistance of counsel following entry of a guilty plea has an even higher burden to meet. *See Lafler v. Cooper*, 132 S. Ct. 1376 (20120; *Hill v. Lockhart*,

7

474 U.S. 52, 53-59 (1985); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit stated that:

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on trial."

*Hooper*, 845 F.2d at 475.

### A. Ineffective Assistance: Failing to File a Direct Appeal

Defendant claims that his trial counsel failed to file an appeal when directed to do so. (ECF No. 252-1 at 3.) Defendant does not provide the court with any date, time, or circumstances surrounding his request that his trial counsel file an appeal. Because Defendant does not provide the court with any factual basis to support his contention, Defendant cannot meet his burden as required by *Strickland*. Further, Defendant's counsel provided an affidavit wherein he presented to the court a factual summary of his representation of Defendant up to and after sentencing. (ECF No. 267-1.) In his affidavit, Defendant's counsel stated he discussed with Defendant the waiver of appeal when reviewing the final written plea agreement and after sentencing, and he did not see any meritorious issue from which to appeal from concerning sentencing. (*Id*. at 3.) Therefore, Defendant has failed to meet his burden on this issue.

### B. Ineffective Assistance: Failing to File a Motion to Suppress Evidence

Defendant claims that his Fourth Amendment rights were violated when "law enforcement authorities illegally searched and seized evidence from his residence without a search warrant and counsel failed to file a motion to suppress." (ECF No. 252-1 at 6.) Defendant fails to detail what evidence was seized, when it was seized, or how it prejudiced him in any way. As noted above, he pled guilty to Count Six, which charged Defendant with possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). (ECF Nos. 209, 256 at 22-26.) This charge

was based on evidence seized as a result of a search which was authorized by a search warrant signed by United States Magistrate Judge Paige Gossett on February 15, 2013. (ECF No. 49.)

The search was pursuant to a federal search warrant and Defendant has failed to show how the warrant was not supported by probable cause or otherwise defective. Defendant's assertion that a search was conducted without a warrant is not supported by the record. Defendant cannot and has not shown that counsel's performance fell below an objective standard of reasonableness and that counsel's deficiencies prejudiced his defense. Therefore, Defendant has not and cannot meet his burden under *Strickland* on this issue.

**C. Ineffective Assistance: Failing to Challenge Defendant's Prior Convictions**

Defendant claims that his trial counsel failed to challenge his two felony drug convictions. (ECF No. 252-1 at 8.) Defendant pled guilty to a violation of 18 U.S.C. § 924(c) and received a sentencing enhancement under the guidelines. (ECF Nos. 209, 256 at 22-26.) Defendant was convicted of two "controlled substance offenses" as defined by U.S.S.G. § 4B1.2(b), which formed the basis for his career offender status under U.S.S.G. § 4B1.1(c)(1). Defendant was advised of this at his change of plea hearing and he was afforded an opportunity to object at sentencing. (ECF No. 256 at 15-16.) Defendant has failed to articulate how his prior felony convictions should have been challenged, why they should not form the basis for his status as a career offender, and how his counsel was ineffective for failing to object to their use in calculating his sentencing guidelines. For that reason, Defendant has not and cannot meet his burden under *Strickland*.

**III. CONCLUSION**

For the foregoing reasons, the court **DENIES** Defendant's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (ECF No. 252), and **GRANTS** the Government's Motion for Summary Judgment (ECF No. 268).

9

## IV. CERTIFICATE OF APPEALABILITY

The law governing certificates of appealability provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

November 13, 2017
Columbia, South Carolina