#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF SOUTH CAROLINA
#### ORANGEBURG DIVISION

| | |
|---|---|
| United States of America, ) | Criminal Action No.: 5:12-cr-810-JMC-1 |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Gerald Decosta Whaley, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Defendant Gerald Decosta Whaley is a prisoner currently serving a sentence of two hundred sixty-two (262) months in the Bureau of Prisons ("BOP"). (ECF No. 244.)

This matter is before the court on Whaley's *pro se* Motion for Release under 18 U.S.C. § 3582.[1] (ECF No. 318.) Specifically, Whaley requests a sentence reduction to allow him to serve the remainder of his sentence in home confinement in light of his susceptibility to an adverse outcome if he contracts COVID-19. (*Id*.) For the reasons set forth below, the court **DENIES** Whaley's Motion for Release (ECF No 318).

### I.     RELEVANT BACKGROUND TO PENDING MOTION

On October 18, 2012, the Grand Jury named Whaley in an Indictment containing the following three (3) counts:

(1) From at least in or about 2006, and continuing through the date of this Indictment, in the District Court of South Carolina, GERALD DECOSTA WHALEY and others,[2] both known and unknown to the Grand Jury, knowingly did conspire and agree together in violations of federal law:

    A. Knowingly, intentionally, and willfully possessed with intent to distribute and distribute cocaine, a Schedule II controlled substance, and marijuana 3,4-methylenedioxymethamphetamine (commonly known as "MDMA or "ecstasy"), both Schedule I controlled substances, involving 5 kilograms or more

---

[1] Motions under this section are called Motions for Compassionate Release. *See United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020).

[2] The Indictment included Troy Kentrell Whaley as a co-defendant.

1

    of a mixture or substance containing a measurable amount of cocaine, 50 kilograms or more of a mixture or substance containing a measurable amount of marijuana and a quantity of 3,4-methylenedioxymethamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 841(b)(1)(D); all in violation of 21 U.S.C. § 846.

. . .

  (2) On or about August 25, 2012, in the District of South Carolina, the defendant, GERALD DECOSTA WHALEY, knowingly, intentionally, and unlawfully possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, and a quantity of Alprazolam, a Schedule IV controlled substance; in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

. . .

  (3) On [or] about August 25, 2012, in the District of South Carolina, the defendant, GERALD DECOSTA WHALEY, knowingly carried a firearm during and in relation to, and did possess a firearm to commit a drug trafficking crime, with intent to distribute marijuana and Alprazolam, which is prosecutable in a court of the United States; in violation of 18 U.S.C. § 924(c)(1)(A)(i).

(ECF No. 3.)

On February 12, 2012, Whaley pleaded not guilty to these charges. On February 18, 2013, the Government filed an Information notifying Whaley that he was "subject to increased penalties" pursuant to 21 U.S.C. § 851, based on the following convictions:

  (1) August 17, 2003: Attempt to traffic Marijuana

  (2) September 5, 2007: Manufacturing, Possession other substance Schedule I, II, III with intent to distribute 2nd offense x 2 (Marijuana & Ecstasy) . . . Date of Offense: November 29, 2006. Sentence to four years; balance suspended for two years' probation with credit for time served [] and six months concurrent [].

(ECF No. 34.)

On February 21, 2013, the Government filed an Amended Information adding Whaley's January 17, 2013 charge of Manufacturing, Possession [of] other substance Schedule I, II, III with Intent to Distribute 3rd. (ECF No. 43.) On April 16, 2013, the Government filed a Superseding Indictment adding four (4) additional counts to Whaley's charges. (ECF No. 66.) Whaley was

indicted on counts 1, 2, 3, 4, 5, 6, and 7, as well as the forfeiture allegation. (*Id.*) On April 30, 2013, Whaley pleaded not guilty to these charges. (ECF No. 100.)

On January 14, 2014, Whaley signed a written Plea Agreement agreeing "to plead guilty to count 6 of the Superseding Indictment[3]. . . a violation of Title 18, United States Code, § 924(c)." (ECF No. 209 at 1.) The same day, the court accepted Whaley's change of plea. (ECF No. 213.) The Government provided the court with an overview as to its request for three hundred (300) months or twenty-five (25) years of imprisonment for Whaley. (ECF No. 240.) In the Government's Sentencing Memorandum, the Government states that three hundred (300) months was appropriate because "[a]t trial, Gerald was facing a statutory life sentence,[4] which was based in large part due to the fact that he has continued to offend despite numerous opportunities to stop his armed drug dealing activities." (ECF No. 240 at 6.) The court entered the Judgment on April 30, 2014, and sentenced Whaley to two hundred sixty-two (262) months in the BOP. (ECF No. 244.) Whaley did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit.

On January 30, 2020, the World Health Organization ("WHO") declared an outbreak of coronavirus 2 (SARS-CoV-2)[5] and declared it a pandemic on March 11, 2020. Two days later, on

---

[3] On or about February 12, 2013, in the District of South Carolina, Defendant knowingly possessed firearms in furtherance of drug trafficking crimes, those being conspiracy to possess with intent to distribute and distribute marijuana and cocaine, and possession with intent to distribute marijuana and cocaine, which are prosecutable in a court of the United States. (*See* ECF No. 3.)

[4] The minimum/maximum term of imprisonment is 5 years to Life, consecutive to any other term of imprisonment imposed, pursuant to 18 U.S.C. § 942(c)(1)(A)(i). (*See* ECF No. 240.)

[5] Also known as COVID-19, the coronavirus disease 2019 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). The COVID-19 virus is primarily spread from person to person through the nose or mouth, when a person with the disease coughs, sneezes, or speaks. *WHO,* https://www.who.int./emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited June 17, 2020). People may also become infected by touching a contaminated surface and then by touching their eyes, nose, or mouth. *Id.*

March 13, 2020, the President of the United States officially declared a national emergency due to the virus. The federal prison system was exposed to the COVID-19 outbreak. S*ee* Fed. Bureau of Prisons, *COVID-19 Coronavirus*, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19) (last visited June 17, 2020).

On April 18, 2020, Whaley submitted a "Request for Administrative Remedy" form to the BOP; however, on May 4, 2020, the BOP denied Whaley's request stating that he did not meet the criteria for transfer to home confinement. (ECF No. 318-2.) More specifically, the BOP indicated that Whaley had a high "PATTERN" risk score. (*Id*.) The BOP also denied Whaley's request because he had to serve at least 50% of his sentence in order for him to meet the BOP's criteria, whereas Whaley only served 32.5% of his sentence. (*Id*.)

On May 4, 2020, Whaley filed a Motion for Release requesting relief under 18 U.S.C. § 3582 seeking a sentence reduction to serve the remainder of his sentence in home confinement because of his "serious underlying health factors puts (sic) [him] at certain risk." (ECF No. 318 at 2.) Whaley has served about seventy-seven (77) months of his 262-month sentence and is currently housed at FCI Butner Low, located in Butner, NC. In the Motion, Whaley avers that his medical conditions increase his susceptibility to the disease, because several of those conditions, including diabetes, high blood pressure, and obesity, have been identified by the Centers for Disease Control and Prevention as factors most likely to cause COVID-19 complications. (*Id*.) Whaley requests that the court allow him to live with Kennetta Guinyard, his three (3) daughters, and two (2) granddaughters. (*Id*. at 4.) Whaley alleges that he is being housed in low security with more than one hundred fifty (150) inmates in an open dormitory and "precautions like social distancing are simply not possible." (*Id*. at 2.) Whaley alleges that he faces serious health problems if he were to

remain incarcerated for the remainder of his sentence due to his underlying health issues. He claims that as of May 14, 2020, twenty-one (21) people fell ill due to COVID-19 and had to be taken out of his dormitory. (ECF No. 318-2.)

## II.    LEGAL STANDARD

### A. Administrative Exhaustion

"A sentencing court does not have inherent authority to modify an otherwise valid sentence." *United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020). A [defendant] may bring a motion to modify his sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 § 3582(c)(1)(A). Accordingly, a person seeking a compassionate release is generally required to exhaust his administrative remedies prior to bringing a motion before the district court. *Id*. However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *See United States v. Poulios*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020); *see also United States v. Crawford*, No. 2:03-cr-10084, 2020 WL 2537507, at *1 (W.D. Va. May 19, 2020) (finding that the exhaustion requirement has been waived where defendant had not fully exhausted his administrative remedies).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors if there are "extraordinary and compelling

reasons" that warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, the Sentencing Commission directs courts to consider when a defendant poses "a danger to the safety of any other person or to the community," before granting a compassionate release. *United States v. Gomez*, No. 2:18-cr-01435-1, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (quoting U.S.S.G § 1B1.13). Courts should assess factors under 18 U.S.C. § 3142(g) to determine whether a defendant is dangerous to the safety of others or the community. *United States v. Ennis*, EP-02-cr-1430-PRM-1, 2020 WL 2513109, at *7 (W.D. Tex. June 17, 2020). These factors include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*. However, these are mere suggestions and do not bind a court's application of § 3582(c)(1)(A)(i). *McCoy v. United States*, No. 2:03-cr-197, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 15-cr-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he court may independently evaluate whether the petitioner has raised an extraordinary and compelling reason for compassionate release . . .") In sum, the court may consider a combination of factors including, but not limited to, those listed in U.S.S.G § 1B1.13, to evaluate a defendant's request for a sentence modification under 18 U.S.C § 3582(c)(1)(A)(i).

### III.   ANALYSIS

A. Exhaustion of Administrative Remedies

Section 3582 provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—[T]he court, upon motion of the Director of the Bureau of Prisons (BOP), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

Upon its review, the court finds that it must deny Defendant's Motion because he has not exhausted all of his administrative remedies. The BOP requires proper exhaustion of its administrative remedies, which means proceeding as follows: (1) file the request to the BOP; (2) receive approval or denial from the warden of the facility; (3) if denied, submit an appeal to the BOP; then (4) file a motion for release with the court.[6] Whaley initiated a review process with the BOP regarding his request for reduction in sentence, and the BOP denied his request because he did not meet minimum requirements. (ECF No. 318-2 at 4.) Thereafter, Whaley failed to appeal the BOP's initial denial of his request. According to the statute, Whaley needed to fully exhaust all of his administrative remedies, which includes appealing his denial to the BOP before the court can consider modifying his term. Because Whaley has failed to appeal his denied request under § 3582(c)(1)(A), the court lacks authority to grant a sentence reduction under that provision. *See United States v. Johnson*, No. 14-cr-0441, 2020 WL 1663360, at *6 (D. Md. Apr. 3, 2020) (noting that "[u[ntil [the administrative exhaustion] requirements are satisfied, the Court lacks jurisdiction to entertain [a 3582(c)(1)(A) m]otion"); *see also United States v. Kubinski*, No. 3:93-cr-28-1H, 2020 WL 2475859, at *2 (E.D.N.C May 13, 2020).

However, due to COVID-19, courts have been given authority to waive the exhaustion requirements at their discretion. Even if this court decided to waive Whaley's exhaustion requirements, the court is not inclined to grant Whaley's request for release because of the other reasons discussed below. *United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020).

---

[6] *See Administrative Remedy Program*, https://www.bop.gov/policy/progstat/1330_018.pdf (last visited July 2, 2020).

B. Compassionate Release

A defendant must bear the burden of proof before a court can grant a compassionate release motion. *Cf. United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). The court may modify the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In light of COVID-19, courts have construed this pandemic and the severe illnesses as "extraordinary and compelling." *E.g. United States v. Salvagno*, No. 5:02-cr-51, 2020 WL 3410601 (S.D.N.Y. Apr. 23, 2020).

Here, Whaley asserts that he is susceptible to COVID-19 due to his health issues, paired with the current outbreak at the facility where he is housed, which provides the extraordinary and compelling reasons that warrant his compassionate release. (ECF No. 318.) Whaley states that he is forty-one (41) years old and has a history of insulin dependent diabetes, high blood pressure, and obesity. (*Id.*) According to CDC guidance, the following conditions and risk factors place individuals at high risk for severe COVID-19 illness: asthma, chronic lung disease, diabetes, serious heart conditions, chronic kidney disease, severe obesity, liver disease, being immunocompromised, over the age of sixty-five (65), and being in a nursing home or long-term facility.[7] The court is sympathetic to Whaley's health conditions and notes that two of his conditions (obesity and diabetes) expressly meet those enumerated by the CDC as increasing his risk for severe illness due to COVID-19. The court finds that Whaley fails to present "extraordinary and compelling" reasons for his release to home confinement despite listing multiple medical conditions that establish susceptibility to COVID-19.

---

[7] Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, updated April 17, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 17, 2020).

C. <u>Significant Criminal History</u>

In ultimately deciding whether Whaley should be released under § 3582, the court must consider whether Whaley is a danger to the safety of any other person or the community. *See* 18 U.S.C. § 3142(g); *Ennis*, WL 2513109, at *7. In making this decision, the court should consider "(1) the nature and circumstances of the offense charged, including whether offense is a crime of violence . . . or involves a controlled substance [or] firearms; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . criminal history and record; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 § 3142(g).

In 2014, Whaley pled guilty to possessing firearms in furtherance of drug trafficking crimes, and he admitted to distributing marijuana and cocaine. (ECF No. 213.) Prior to pleading guilty, investigations revealed that Whaley and his brother, Troy, were "extensively involved in the distribution of multi-kilogram quantities of cocaine and marijuana . . . from a Mexican source of supply." (ECF No. 237 at 6 ¶ 17.) Whaley was dealing the cocaine and marijuana out of his residence between 2006 and February 2013. (*Id.*) At the time of sentencing, the nature and circumstances of the offense, his past history and characteristics, along with the need to ensure adequate punishment, deterrence, and community protection, warranted his sentence of two hundred sixty-two (262) months of imprisonment. Whaley is a Career Offender under U.S.S.G. § 4B1.1(c)(1). Whaley is rated with a criminal history score of eight (8) out of ten (10). (ECF No. at 14-15.) Whaley has only served about six (6) years, which is less than one-third of the given sentence. Therefore, the court concludes that Whaley's sentence does not allow for him to meet the criteria for extraordinary relief.

Releasing Whaley now would be an injustice to the criminal justice system because the

evidence against Whaley was substantial. *See United States v. Smith*, No. 3:11-cr-00287, 2020 WL 3288448, at *2 (W.D.N.C. June 18, 2020) (denying motion for compassionate release because the evidence concluded that defendant was a danger to community). An offense with a substantial weight of evidence involving controlled substances and firearms weighs against relief. The records show that during the execution of the search warrant at Whaley's residence, federal agents seized eight (8) firearms, miscellaneous rounds of ammunition, approximately five (5) pounds of marijuana, over $100,000.00 in cash, digital scales, drug paraphernalia, ballistic helmets, and numerous pills. (ECF No. 237 at 7 ¶ 17.) Additionally, Whaley's past history and characteristics weigh against his release. Prior to his most recent conviction, Whaley had a significant criminal history involving drug possession and drug trafficking offenses along with other minor criminal offenses. (ECF No. 237 at 10-15.)

Moreover, Whaley requests to be confined at the very house where he committed the crimes. (ECF No. 318.) In the court's view, Whaley presents a concern that he may reoffend if he is released. *See United States v. Feiling*, 3:19-cr-112, 2020 WL 1821457 (E.D. Va. Apr. 10, 2020) (denying motion for compassionate release in part because petitioner committed offense while at home and wanted to return home to finish sentence); *see also United States v. Hylander*, No. 18-cr-60017, 2020 WL 1915950, at 3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release because "defendant proposes to be released at home with wife and brother-in-law, which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend.") Thus, the court determines that the nature and seriousness of any danger Whaley may pose to the community prevents the granting of his request.

## IV.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES WITHOUT**

**PREJUDICE** Defendant Gerald Decosta Whaley's Motion for Release under 18 U.S.C. § 3582. (ECF No. 318.)

    **IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 6, 2020
Columbia, South Carolina